UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

04 OCT 18 PM 4:09

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| In the Matter of the Arbitration Between ) | |
| ) | |
| TMS-USA L.L.C., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CV 04-B-0740-W |
| ) | |
| R&G INDUSTRIAL SERVICES, LTD., ) | |
| ) | |
| Defendant. ) | |

ENTERED
OCT 18 2004

## MEMORANDUM OPINION

This case is presently pending before the court on defendant's Motion to Dismiss or, in the alternative, for Summary Judgment. (Doc. 3.) Plaintiff TMS-USA has filed a Petition, seeking to compel defendant R&G Industrial Services to arbitrate the disputes between them. (Doc. 1.) Defendant contends that plaintiff's petition is due to be dismissed because (1) "the complaint fails to state a claim upon which relief can be granted," (2) "there are no genuine issues as to any material fact, and [defendant] is entitled to judgment as a matter of law," and (3) "the Court lacks subject matter jurisdiction to compel arbitration in Austria." (Doc. 3 ¶ 1.) Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion to Dismiss or, in the alternative, for Summary Judgment, (doc. 3), is due to be granted.



## DISCUSSION

The Eleventh Circuit has said, "Since 'once a federal court determines that it is without subject matter jurisdiction, [it] is powerless to continue,' [a federal court] must always first be sure of [its] own jurisdiction whenever it is in doubt." *Amos v. Glynn County Bd. of Tax Assessors*, 347 F.3d 1249, 1255 (11th Cir. 2003)(quoting *University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999)). Therefore, this court will first examine defendant's contention that this court is without subject matter jurisdiction.

Plaintiff contends that it has a "'valid, irrevocable, and enforceable' arbitration agreement[ ]," which mandates resolution of the parties' disputes by arbitration in Vienna, Austria; plaintiff contends that its arbitration agreement may be enforced pursuant to 9 U.S.C. § 4 of the Federal Arbitration Act [FAA]. (Doc. 1 at 5, 6.) However, Section 4 of the FAA allows a district court to compel arbitration only "within the district in which the petition for an order directing such arbitration is filed." 9 U.S.C. § 4. Therefore, under the terms of Section 4 of the FAA, this court is without jurisdiction to compel defendant to arbitrate in Vienna, Austria, which is not within the Northern District of Alabama, the district in which plaintiff filed its petition to compel arbitration. *See Inland Bulk Transfer v. Cummins Engine Co.*, 332 F.3d 1007, 1018 (6th Cir. 2003)(citing *Mgmt. Recruiters Int'l, Inc. v. Bloor*, 129 F.3d 851, 854 (6th Cir. 1997)("'where the parties have agreed to arbitrate in a particular forum, only a district court in that forum has jurisdiction to compel arbitration pursuant to Section 4'")).

Nevertheless, the FAA allows a district court to compel arbitration abroad pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards. 9 U.S.C. § 203. "An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy." *Id.* Section 202 provides:

> An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention. ***An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states***. For the purpose of this section a corporation is a citizen of the United States if it is incorporated or has its principal place of business in the United States.

9 U.S.C. § 202 (emphasis added). Therefore, this court has jurisdiction to compel arbitration in Austria if the agreement "falls under the Convention." *Id.*

> A court in the United States faced with a request to refer a dispute governed by Chapter Two to arbitration performs a "very limited inquiry" into whether an arbitration agreement exists and falls within the Convention's coverage. *See DiMercurio v. Sphere Drake Insurance, PLC*, 202 F.3d 71, 74 (1st Cir. 2000)(citing *Ledee v. Ceramiche Ragno*, 684 F.2d 184, 186 (1st Cir. 1982)). The court must consider four preliminary questions:
>
>> (1) is there a written agreement to arbitrate the subject of the dispute? (2) does the agreement provide for arbitration in the territory of a signatory of the Convention? (3) does the agreement arise out of a commercial relationship? (4) is a party to the agreement not an American citizen, or does the commercial relationship have some reasonable relation with one or more foreign states?

3

*DiMercurio*, 202 F.3d at 74 (citing *Ledee*, 684 F.2d at 186-87).

*Svenska Ortmedicinska Institutet v. Desoto*, No. CIV. 00-368-P-C, 2001 WL 175261, at *2-*3 (D. Me. Feb. 22, 2001).

The arbitration agreement at issue in this case is in writing and call for arbitration in Vienna, Austria. (*See* doc. 9, Ex. A, ex. 4 at 17.)[1] TMS-USA admits that it is a citizen of the United States. (*See* Doc. 1 ("Plaintiff-Petitioner TMS-USA LLC . . . is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 1325 Avenue of the Americas, New York, NY 10019.").) Defendant is also a citizen of the United States. (*See* doc. 1 § 2.) Moreover, there is no dispute that the parties' relationship is a commercial relationship.

Therefore, in order for this court to find that the arbitration agreement falls under the Convention – and, thus, that it has jurisdiction – the court must find that the relationship between plaintiff and defendant "involves property located abroad, envisages performance . . . abroad, or has some other reasonable relation with one or more foreign states." 9 U.S.C. § 202. The parties agree that their commercial relationship did not involve property located abroad or performance abroad; however, they disagree as to whether their relationship had a reasonable relation to a foreign state.

---

[1] The parties dispute the validity of the arbitration agreement. However, neither party challenges that the agreement at issue is in writing and that it calls for arbitration in Vienna.

"A [foreign] state bears a reasonable relationship to a transaction when a significant enough portion of the making, or of the performance, of the transaction occurs or is to occur in that [foreign] state." *See* 1A Lary Lawrence, ANDERSON ON THE UNIFORM COMMERCIAL CODE § 1-105:61; U.C.C. § 1-105 cmt. 1 (1989).[2] Plaintiff argues that the transaction has a reasonable relation with Austria for the following reasons –

1. "No negotiations were made with [plaintiff] itself, which during the initial negotiations did not exist and later had no employees."

2. "[Defendant] negotiated the Contract not with [plaintiff], but rather with TMS Austria."

---

[2] The "reasonable relation" test in the Convention was borrowed from Section 1-105 of the Uniform Commercial Code [UCC]; during the enactment of 9 U.S.C. § 202 –

> the Chairman of the Secretary of State's Advisory Committee on Private International Law, Richard D. Kearney, testified as follows:
>
> > We have included in section 202 a requirement that any case concerning an agreement or award solely between U.S. citizens is excluded unless there is some important foreign element involved, such as property located abroad, the performance of a contract in a foreign count[r]y, or a similarly reasonable relation with one or more foreign states. The reasonable relationship criterion is taken from the general provisions of the Uniform Commercial Code.
> >
> > Section 1-105(1) of the code permits the parties to a transaction that bears a reasonable relationship to any other state or nation to specify that the law of that state or nation will govern their rights and duties.
>
> S. Rep. 702, 91st Cong., 2d Sess. app. at 6 (1970), *quoted in Fuller Co. v. Compagnie Des Bauxites De Guinee*, 421 F. Supp. 938, 942 (W.D. Pa. 1976).

*Jones v. Sea Tow Services Freeport NY Inc.*, 30 F.3d 360, 365-66 (2d Cir. 1994). The court notes that U.C.C. § 1-105 was revised in 2001. *See* U.C.C. § 1-301 and Official Comment.

3. "Numerous emails were sent by [defendant] directly to TMS-Austria during contract negotiations."

4. "All payments made to [defendant] by [plaintiff] were funded by TMS Austria."

(Pl. Mem. in Opp. to Mot. to Dismiss at 26-27; *see also* doc. 9 ¶¶ 9-11.)³

Plaintiff alleges that it did not negotiate with plaintiff because it did not exist "during the initial negotiations." *Id*. This statement is not supported by the evidence, which

---

³Andreas Schettler, in an affidavit, stated:

2. Since October 1996, I have been employed as a Senior Executive of TMS Produktionsysteme GMBII ("TMS Austria"), an Austrian corporation headquartered in Linz, Austria. Since 2002, I was also the Project Manager responsible for the work to be done by TMS[-USA] on the Mercedes Plant in Tuscaloosa, Alabama . . . .

. . .

9. TMS – an indirect U.S. subsidiary of TMS Austria – is a single purpose entity organized and formed by TMS Austria solely to act on its behalf for constructing, pursuant to the Contract, a portion of the automated assembly system for the Mercedes Plant.

10. R&G negotiated the Contract with TMS Austria, and not TMS. Numerous emails were sent by R&G directly to TMS Austria during contract negotiations. No negotiations were made with TMS itself, which entity did not even exist during the initial negotiations between the parties and which, when it did come into existence, initially had no employees.

11. All payments made to R&G by TMS were funded or arranged by TMS Austria.

(Doc. 9 ¶¶ 2, 9-11.)

6

demonstrates that plaintiff was formed on September 20, 2002, (doc. 11, Ex. C), and that it contacted defendant approximately two months later, (*id.*, Ex. A ¶ 3-4).

Plaintiff contends that defendant negotiated the contract with TMS-Austria. Again, the record does not support plaintiff's position. For example, plaintiff has submitted the minutes of a January 30, 2003 meeting, which clearly indicate that defendant was negotiating with plaintiff, not TMS-Austria. (Doc. 9, Ex. A, ex. 2.) The Minutes of the Meeting indicate that Schettler participated in the January 30, 2003 meeting as a representative of plaintiff, not TMS-Austria. (*Id.* at 2.) The minutes are signed by representatives on behalf of plaintiff, not TMS-Austria. (*Id.* at 8.) The purchase order indicates that it is from plaintiff, not TMS-Austria. (*Id.*, Ex. A, ex. 1 at 1, 6.)[4] Therefore, the court cannot say that TMS-Austria, rather than plaintiff, negotiated the contract.

Plaintiff also contends, "All payments made to [defendant] by [plaintiff] were funded by TMS[-]Austria." However, the purchase order states, "Payment will be made by ***TMS-USA*** after 30 days of receipt of invoices." (Doc. 9, Ex. A, ex. 1 (emphasis added).) Also, the purchase order requires that the invoices be sent to plaintiff's office in New York City and that copies of the invoices be sent to the job site in Tuscaloosa and to plaintiff in Redwood City, California. (*Id.* at 5.) Clearly, defendant was to be paid by plaintiff, (*id.*;

---

[4]The purchase order, on paper bearing plaintiff's name and address, states, "On the basis of the Minutes of Meeting, dtd. 30.01.2003, we award you with following scope of supply and services . . . ." (Doc. 9, Ex. A, ex. 1 at 1.) It states that the delivery address is "MSUSI, TMS USA LLC, Mercedes Drive, Vance, Alabama . . ." (*Id.*) The purchase order is signed by representatives of plaintiff. (*Id.* at 6.)

7

doc. 4, Ex. E ¶ 1, 9), and plaintiff, not TMS-Austria, was to be paid by Chiyoda and Pac Americas, LLC, ["C&P"] for work done at the Mercedes plant, (doc. 4, Ex. E ¶ 7; doc. 9, Ex. A, ex. 5 at 2).

Finally, plaintiff contends that there were a number of e-mails and telephone calls to and from Austria during the parties' negotiations. There are a number of e-mails in the record, and, indeed, some of these e-mails indicate telephone calls to Austria. However, viewing the transaction as a whole, this court cannot say that the communications that were made to or received from somewhere in Austria are a "significant enough portion of the making . . . of the transaction" to find that Austria has a reasonable relation to the contract, which was between two citizens of the United States for a construction project in Tuscaloosa, Alabama.

Therefore, because the court finds that the transaction does not have a reasonable relation with Austria, the court does not have jurisdiction to compel arbitration in Austria.[5] Defendant's Motion to Dismiss/Motion for Summary Judgment is due to be granted and plaintiff's petition to compel arbitration is due to be denied.

## CONCLUSION

For the foregoing reasons, the court is of the opinion that there are no material facts in dispute and defendant is entitled to judgment as a matter of law. An order granting defendant's Motion to Dismiss/Motion for Summary Judgment, and dismissing plaintiff's

---

[5]Defendant makes a number of other arguments in support of its Motion to Dismiss which are pretermitted by the court's holding that it lacks jurisdiction to compel arbitration.

Petition to Compel Arbitration will be entered contemporaneously with this Memorandum Opinion.

DONE this 18th day of October, 2004.

*Sharon Lovelace Blackburn*
**SHARON LOVELACE BLACKBURN**
United States District Judge